U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

FEB 0 2 2016

TONY R. MOORE CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| KEDRICK SCOTT, <br>     Petitioner <br><br> VERSUS <br><br> BURL CAIN, WARDEN, <br>     Respondent | CIVIL ACTION <br> SECTION "P" <br> 1:15-CV-00576 <br><br><br> JUDGE DEE D. DRELL <br> MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Kedrick Scott ("Scott") on March 11, 2015 (Doc. 1). Scott is contesting his 2009 conviction by a jury in the Twelfth Judicial District Court in Avoyelles Parish, Louisiana, on one count of second degree murder and his sentence of life imprisonment without benefit of probation, parole, or suspension of sentence. Scott is incarcerated in the Louisiana State Pentitentiary in Angola, Louisiana.

Scott raises the following grounds for relief in his habeas petition (Doc. 1):

> 1. The evidence adduced at trial was insufficient to prove second-degree murder beyond a reasonable doubt because of the inconsistent and conflicting testimony.
>
> 2. Trial counsel provided ineffective assistance when he failed to (1) object to the trial court's erroneous instructions on the responsive verdict of manslaughter, and (2) investigate the charges.

Respondent answered the petition (Doc. 12) and Scott filed a reply (Doc. 15). Scott alleges and Respondent agrees that Scott has

exhausted his state court remedies. Scott's habeas petition is now before the Court for disposition.

## Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal in State v Scott, 2009-748 (La. App. 3 Cir. 12/9/09), 26 So.3d 313, 314, writ den., 2010-0094 (La. 6/25/10), 38 So.3d 336 (Doc. 12, Ex. 5, Tr. pp. 45-46/94) are as follows:

> The events at issue in the case occurred around 3:00 a.m. on April 20, 2008, in the parking lot of Bize's Lounge in Marksville, Louisiana. As the lounge was closing, a large crowd gathered in the parking lot, and several fights broke out. Bize's Lounge's security maced the crowd. The victim, Javondre Ravare, and his girlfriend, Carla Jones, upon leaving the front door, smelled the mace and decided to exit the lounge through a side door. Ms. Jones testified that, as the couple made their way to cross the street to get to their car, Mr. Ravare noticed a "commotion going on" across the street and instructed her to "stay right there." Derrick Stevenson testified that the "commotion" was the defendant and several of his friends beating Brandon Thomas's car in what Mr. Stevenson thought was an attempt to get Mr. Thomas out of the car. Several witnesses testified that when Mr. Ravare turned the corner of the club, the defendant struck Mr. Ravare several times with a baseball bat. Mr. Ravare fell to the ground unconscious and was later pronounced dead at the Avoyelles Hospital.

## Rule 8(a) Resolution

The Court is able to resolve this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact relevant to the petitioner's claims, and the state court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983);

Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA-which is applicable to habeas petitions filed after its effective date on April 24, 1996-habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under § 2254 (d)(1), and questions of fact are reviewed under § 2254(d)(2). See Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

3

## Law and Analysis

### Ground 1 - Evidence

Scott contends the evidence adduced at trial was insufficient to prove second-degree murder beyond a reasonable doubt because of inconsistent and conflicting testimony. Scott argues that his defense at trial was manslaughter, the witnesses who testified that he was the person who struck the victim were not credible, and the jurors received an erroneous jury instruction which caused them to fail to consider that the offense was committed in sudden passion or heat of blood due to reasonable provocation.

Habeas relief on a claim of insufficient evidence is appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. See West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242 (1997), citing Jackson v. Virginia, 443 U.S. 307, 322-26 (1979). To apply this standard, courts look to elements of the offense as defined by state substantive law. See Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001). All credibility determinations and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a state court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. See Ramirez v. Dretke, 398 F.3d 691, 693 (5th Cir.

4

2005).

La.R.S. 14:30.1 defines second degree murder, in pertinent part, as follows:

> § 30.1. Second Degree Murder
>
> A.  Second degree murder is the killing of a human being:
>     (1) When the offender has a specific intent to kill or to inflict great bodily harm;

1.

Scott argues that the state courts erred in finding there was sufficient evidence to support his conviction because there were conflicts in the testimony concerning whether Scott had a bat and hit the victim, Javondre Ravare, Sr., with it. Scott argues that, in the commotion of the event, including gunshots being fired and mace sprayed into the air, none of the State's witnesses can say for certain who actually struck Ravare in the head with a baseball bat and who attacked him with mace.

Scott admits, and the record shows, that Byron Augustine[1] (Doc. 12, Ex. 4, p. 257/414), Carla Jones[2] (Doc. 12, Ex. 4, pp. 230, 234,

---

[1] Byron Augustine testified that he and his brother, Chris, were bouncers at the bar, and when the bar closed, a lot of people started "ganging up" and fighting; the fights started in front of the club and moved around to the side of the club (Doc. 12, Ex. 4, pp. 255-/414). Chris Augustine sprayed mace to disperse the people fighting in front of the club (Doc. 12, Ex. 4, p. 256/414). Byron saw Scott hit Ravare with the bat three times, then Chris sprayed mace on Scott and Byron dragged Ravare to the front of the club (Doc. 12, Ex. 4, p. 257, 259/414).

[2] Carla Jones, Javondre Ravare's girlfriend, testified that Ravare saw people bashing a car and walked toward it, but Scott hit

239, 242/414), Derrick Stevenson[3] (Doc. 12, Ex. 4, pp. 247-250/414), and Catrisha Williams[4] (Doc. 12, Ex. 4, p. 274/414) testified they saw Scott hit Ravare with a bat behind the car wash that was on the side of the bar. Scott argues that Meosha Berry[5] testified that she saw

---

Ravare with a bat, Ravare fell to the ground, and Scott struck Ravare at least twice more (Doc 12, Ex. 4, p. 230/414). Jones testified that, after Ravare fell to the ground, other people kicked and hit him (Doc. 12, Ex. 4, p. 231/414); when gunshots were heard, the people ran and a bouncer from the bar dragged Ravare to the front of the bar (Doc. 12, Ex. 4, p. 231/414). Jones testified that Scott was the only person she saw with a bat (Doc. 12, Ex. 4, p. 242/414).

[3] Derrick Stevenson testified that he was a guard at the Louisiana State Penitentiary and had been in the National Guard for over six years (Doc. 12, Ex. 4, p. 245/414). Stevenson testified that he saw Scott hit Matthew Bradford three times with a bat, then hit Ravare seven or eight times with the bat while other people kicked and stomped him (Doc. 12, Ex. 4, pp. 249-251/414). Stevenson did not see Scott before he attacked Bradford (Doc. 12, Ex. 4, p. 252/414). Stevenson saw the bouncers pull Ravare away (Doc. 12, Ex. 4, p. 153/414).

[4] Catrisha Williams testified that, when she exited the bar through the front door, she saw a white four door car with the Edwards girls, Ashley Jones, and Kedrick by it (Doc. 12, Ex. 4, p. 272/414). Williams testified that she saw Scott try to get to Brandon Thoms's ("Lanky D's") car, she heard a bat hit glass, then she saw Scott hitting the car (Doc. 12, Ex. 4, pp. 273-274/414). Williams testified that she saw Scott hit Ravare with the bat, Ravare fell, and Scott hit Ravare eight or nine more times (Doc. 12, Ex. 4, p. 274/414). Williams testified that everyone began running away and Scott jumped into the white car with the Edward girls and left (Doc. 12, Ex. 4, p. 274/414).

[5] Meosha Berry testified that Scott, Troy Dominick, and Calvin Lyons got into a fight inside the bar, Scott told Berry that he was not leaving until he "got them," they started fighting again outside in front of the bar; Scott grabbed a bat out of someone's hand, hit Matt Bradford with the bat (while others stomped on Bradford), Scott hit Brandon Thomas's car with the bat and then walked up and hit Ravare twice with the bat, and Berry left (Doc. 12, Ex. 4, pp. 263-265/414). Berry testified that Ravare had not

Scott holding a bat and hitting others but not the victim; however, Meosha Berry testified that she was standing next to Ravare when Scott hit Ravare with the bat (Doc. 12, Ex. 4, p. 265/414).

Scott also argues that Terrell Davis[6] (Scott's half-brother) (Doc. 12, Ex. 4, pp. 316, 320/414), Lewis Dixon[7] (Scott's cousin) (Doc. 12, Ex. 4, p. 336/414), and Jerry Allen[8] (Doc. 12, Ex. 4, p. 343/414) did not see Scott holding a bat at all;[9] however, they also testified that they never went behind the car wash on the side of the bar, where

---

done or said anything to Scott (Doc. 12, Ex. 4, p. 266/414).

[6] Terrell Davis, Scott's brother, testified that he first saw Scott inside the club. Davis testified that, the next time he saw Scott, there was a crowd in front of the club and Scott was getting up from the ground (Doc. 12, Ex. 4, p. 318/414). Davis testified that, by the time he made his way to Scott through the crowd, the security guards were spraying mace on everybody and Scott was rubbing his eyes (Doc. 12, Ex. 4, p. 318/414). Davis testified that he and Scott then got into Scott's car and he drove Scott home; Davis stated that he did not see Scott hold a bat or go behind the bar or the car wash, although he admitted Scott could have done so before Davis exited the bar (Doc. 12, Ex. 5, pp. 318-323/414).

[7] Lewis Dixon, Scott's cousin, testified that, when he exited the bar, he saw Scott on the ground in front of the club with five people over him, and a lot of people were fighting (Doc. 12, Ex. 4, pp. 334-335/414). Lewis testified that he did not see Scott or anyone else holding a bat, and that he did not go to the back of the car wash on the side of the club (Doc. 12, Ex. 4, p. 336/414).

[8] Jerry Allen testified that he walked out of the club through the front, where a fight was going on, and saw Scott getting up from the ground (Doc. 12, Ex. 4, p. 342/414). Allen testified that he did not see anyone holding a bat, and that he got into his car and left (Doc. 12, Ex. 4, p. 343-345/414).

[9] Scott also named Kenneth Ravare, Jr. Calvin Lyons, and Katrina Williams as witnesses who did not see him with a bat, but they did not testify at trial.

Ravare was killed (Doc. 12, Ex. 4, pp. 320, 336, 343, /414). Davis testified that, after the fight, he and Scott left the bar together and he did not see Scott use a baseball bat (Doc. 12, Ex. 4, pp. 318-323/414).

Rochelle Edwards[10] (Doc. 12, Ex. 4, p. 350/414), Constance Edwards[11] (Doc. 12, Ex. 4, pp. 360, 363/414), and Teshaun Edwards[12] (Doc. 12, Ex. 4, pp. 371, 373/414) also testified that they were in front of the bar during the fighting and did not see Scott with a baseball bat.

The Louisiana Court of Appeal noted in its opinion that the State was not required to prove that Scott's violent act was the sole cause of Ravare's death, but only that it hastened or clearly contributed to his death (Doc. 12, Ex. 5, p. 49/94). The forensic pathologist who

---

[10] Rochelle Edwards testified that she was still sitting in the car in front of the club when the fight started; when Scott exited the club, someone (not Ravare) hit Scott and knocked him down, then a lot of people started fighting, mace was sprayed, and someone started shooting, so Edwards left (Doc. 12, Ex. 4, pp. 347-350, 354/414).

[11] Constance Edwards testified that she was standing outside, across from the bar, when she saw Scott leave the bar through the front; a lot of people were on the steps waiting for Scott, one of them hit Scott and he fell, then Scott got up again and a lot of people jumped on him, the security guards sprayed them all with mace, then she heard gunshots and left (Doc. 12, Ex. 4, pp. 360-362/414). Edwards testified that she did not see a baseball bat (Doc. 12, Ex. 4, p. 367/414).

[12] Teshaun Edwards testified that she saw Scott exit the club, stop at the steps and argue with people, then a fight broke out, Scott fell and got back up, the fight continued, mace was sprayed, Scott and others moved around the side of the bar, and Edwards heard a gun go off behind the bar; Edwards did not see a bat and did not see Scott again after he went around the side of the bar (Doc. 12, Ex. 4, p. 371-373/414).

performed the autopsy on Ravare, Dr. Joel Carney, testified that the cause of death was injuries to Ravare's head and brain caused by blunt force trauma consistent with being struck forcefully over the top of the head with a baseball bat one or more times (Doc. 12, Ex. 4, pp. 310-311/414). The Court of Appeal reasoned that Dr. Carney could not determine how many blows to the head Ravare received, and witnesses testified that people other than Scott were hitting and stomping Ravare, but Dr. Carney testified that Ravare's injuries were consistent with being hit with a bat and Scott was the only person whom witnesses saw hitting Ravare in the head with a bat (Doc. 12, Ex. 5, p. 50/94).

Since all credibility choices and conflicting inferences must be resolved in favor of the verdict, there is clearly sufficient evidence from the testimony of several eye-witnesses to support Scott's conviction for second degree murder of Javondre Ravare.

2.

Scott argues, in the alternative, that he hit Ravare with the bat in sudden passion or the heat of blood immediately caused by a reasonable provocation. Scott contends that five men knocked him to the ground and sprayed him with mace, temporarily blinding him and depriving him of self-control and cool reflection. Scott contends that, at most, he killed Ravare in sudden passion or heat of blood, and that the evidence only supports a conviction for manslaughter.

La.R.S.14:31 defines the offense of manslaughter, in pertinent part, as follows:

9

> § 31. Manslaughter
>
> Manslaughter is:
> (1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;

The existence of "sudden passion" and "heat of blood" are not elements of the offense but, rather, are factors in the nature of mitigating circumstances which may reduce the grade of homicide. See State v. Overton, 596 So.2d 1344, 1359 (La. App. 1st Cir.), writ den., 599 So.2d 315 (La. 1992). To reduce second degree murder to manslaughter, a defendant must present evidence to show by a preponderance that the homicide was committed in "sudden passion" or "heat of blood" immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. "Sudden passion" and "heat of blood" are factors which mitigate against finding a defendant as culpable as a person who commits a homicide without the occurrence of any extenuating event. See State v. Journet, 629 So.2d 1387, 1390 (La. App. 3d Cir. 1993). These factors need not be affirmatively established but may be inferred from the circumstances of the crime. See State v. Brumfield, 93-2404 (La. App. 4th Cir. 1994), 639 So.2d 312, 317, citing State v. Smith, 571 So.2d 133 (La. 1990), and State v. Thompkins, 403 So.2d 644 (La. 1981).

10

Provocation is a question of fact to be determined by the jury. When the preponderance of the evidence shows that a homicide was committed in sudden passion or heat of blood which would have deprived an average person of his self control and cool reflection, a jury errs in rendering a verdict of second degree murder. See Smith, 571 So.2d at 136.

Therefore, in reviewing a claim that the defendant acted in "sudden passion" or "heat of blood," the habeas court must determine whether, viewing the evidence in the light most favorable to the conviction, a rational trier of fact could have found those mitigating factors were not established by a preponderance of the evidence. See Overton, 596 So.2d at 1359; see also Brumfield, 639 So.2d at 317, citing State v. Lombard, 486 So.2d 106, 111 (La. 1986); Cupit v. Whitley, 28 F.3d 532, 542 (5th Cir. 1994), cert. den., 513 U.S. 1163 (1995).

On post-conviction relief, the District Judge noted that Scott armed himself with a bat after the fights he was involved in had ended, so his blood had cooled (Doc. 12, Ex. 6, p. 23/71). "Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed." La.R.S. 14:31. Scott was in a fight but got away from his attackers, armed himself with a bat, hit Matthew Bradford with the bat, beat up Brandon Thomas's vehicle, then killed Ravare with the bat. An average person's

11

blood would have cooled from the initial fight by the time Scott encountered Ravare. Although Scott indeed appears to have lost his self-control, by the time he encountered Ravare that loss simply was no longer attributable to provocation from having been knocked down and maced in the initial fight. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the factors of "sudden passion" or "heat of blood" were not established in light of the testimony of several eye witnesses as to the sequence of events that took place between the time Scott was attacked when he exited the bar and the time he encountered and killed Ravare. Compare, State v. Allen, 94-1941 (La. App. 1st Cir. 11/9/95), 664 So.2d 1264, writ den., 95-2946 (La. 3/15/96), 669 So.2d 433 (the ten to fifteen minutes that elapsed between Defendant's fight and his subsequent random shooting into a crowd of innocent bystanders was sufficient for an average person to have cooled off and regain his self-control). By the time Scott attacked Ravare, the moment for loss of self-control due to provocation in the initial fight had passed.

The evidence established that Scott intended to kill Ravare. Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances. See State v. Thomas, 609 So.2d 1078, 1083 (La. App. 2d Cir. 1992), writ den., 617 So.2d 905 (La. 1993); State v. Kennington, 515 So.2d 521 (La. App. 1st Cir. 1987). The severity of an attack in which a victim is bludgeoned to death with a baseball bat is sufficient to demonstrate the necessary specific

intent to kill or inflict great bodily harm to support a conviction for second degree murder. See State v. Guice, 26,440 (La. App. 2d Cir. 10/26/94), 645 So.2d 1193, 1197, writ den., 94-3122 (La. 6/30/95), 657 So.2d 1022, citing State v. Myers, 584 So.2d 242 (La. App. 5th Cir.), writ den., 588 So.2d 105 (La. 1991), cert. den., 504 U.S. 912 (1992); see also, State v. King, 13-469 (La. App. 3d Cir. 11/6/13), 124 So.3d 623, 632. The blunt force trauma to Ravare's head indicates an intent to inflict great bodily harm on Ravare and supports Scott's conviction for second degree murder. Therefore, there is sufficient evidence to support Scott's conviction for second degree murder.

Since the jury's decision to convict Scott of second degree murder, and the State Courts' decisions to uphold Scott's conviction, were based on a reasonable determination of the facts in light of the evidence presented at trial, Scott is not entitled to habeas relief.

Ground 2 - Ineffective Assistance of Counsel

Scott also contends that his trial counsel provided ineffective assistance when he (1) failed to object to the trial court's erroneous instructions concerning the responsive verdict of manslaughter given to the jury; and (2) failed to investigate the charges.

To prevail on a habeas complaint of ineffective assistance of counsel a complainant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 686 (1984): (1) his counsel's performance was deficient; and (2) the deficient performance prejudiced his defense. A defendant is prejudiced if there

13

is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different. To make that determination, the court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. The court does not assess any alleged error in isolation. In an examination of state proceedings under 28 U.S.C. § 2254 the court will not reject an adjudication on the merits unless the action by the state court is found to be contrary to, or an unreasonable application of, clearly established federal law, or the state court's determination of the facts is manifestly unreasonable in light of the evidence. See Jones v. Cain, 227 F.3d 228, 230 (5th Cir. 2000), and cases cited therein.

A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time. See Dowthitt v. Johnson, 230 F.3d 733, 743 (5th Cir. 2000), cert. den., 532 U.S. 915 (2001), citing Strickland, 466 U.S. at 689. Thus, the court's scrutiny of counsel's performance is highly deferential. The court must be particularly wary of arguments that essentially come down to a matter of degrees, i.e., did counsel investigate enough or did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing. See Dowthitt, 230 F.3d at 743, citing Kitchens v. Johnson, 190 F.3d 698, 703 (5th Cir. 1999),

14

cert. den., 504 U.S. 958 (1992).

In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. See U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir.), cert. den., 513 U.S. 966 (1994).

1.

First Scott contends the District Judge gave an incorrect instruction to the jury concerning the responsive verdict of manslaughter.

In Scott's trial, the Judge instructed the jury [Doc. 12, Ex. 4, Tr. p. 403/414] as follows:

> However when considering provocation sufficient to deprive an average person of self control and cool reflection, the law requires that there be some act or a series of acts by the victim sufficient to deprive a reasonable person of self control and cool reflection.

Scott objects to this instruction, contending it is not the law.[13] The District Judge reviewed the instruction in Scott's application for post-conviction relief, found it was not a correct recitation of applicable law, and noted that defense counsel had not entered an objection to the instruction (Doc. 12, Ex. 6, p. 23/71). However, the District Judge found that Scott failed to show there was a reasonable probability that the result of the proceeding would have been the same

---

[13] This instruction was used in State v. Charles, 2000-1611 (La. App. 3d Cir. 5/9/01), 787 So.2d 516, 519, writ den., 2001-1554 (La. 4/19/02), 813 So.2d 420, and State v. Jack, 596 So.2d 323, 325 (La. App. 3d Cir. 1992), writ den., 600 So.2d 611 (La. 1992).

if the error had not occurred.

The evidence showed that Scott was attacked in front of the bar, as he exited it; when he got away from his attackers, Scott armed himself with a baseball bat, hit another person and a vehicle with the bat, then went to the side of the building where he found Ravare, an innocent bystander, and killed Ravare with the bat.

As discussed above, the evidence showed that Scott did not kill Ravare in the heat of blood or sudden passion due to provocation. Therefore, as the State Courts found (Doc. 12, Ex. 6, p. 23/71), Scott cannot show there was a reasonable probability that the outcome of the proceeding would have been different if his attorney had objected to the erroneous jury instruction on manslaughter.

Therefore, Scott has not carried his burden of proving he was prejudiced by his attorney's failure to object to the erroneous jury instruction on provocation.

2.

Scott also contends that his trial counsel failed to investigate the charges and facts of the case, and failed to obtain witnesses.

Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993), citing Strickland, 466 U.S. at 691 (1984). However, bare allegations do not suffice. A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation

16

would have revealed and how it would have altered the outcome of the trial. See Nelson, 989 F.2d at 850, citing United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989). Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of how a witness would have testified are largely speculative. See Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978); see also, Boyd v. Estelle, 661 F.2d 388, 390 (5th Cir. 1981). Where the only evidence of a missing witness's testimony is from the defendant, the Court views claims of ineffective assistance with great caution. See Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir. 1986), cert. den., 479 U.S. 1030 (1987). Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. See Sayre, 238 F.3d at 636.

Scott alleges that his attorney requested funds for an investigator because he had found five witnesses from Pointe Coupee who were never questioned and who could exculpate Scott. Scott contends his attorney's request was made ninety days after arraignment, and that his attorney failed to furnish the five witnesses to the investigator until February 18, 2009, fifteen days prior to trial. Scott argues

17

that, had his attorney investigated the case, obtained the attendance of these witnesses, and researched the law, Scott would have had a viable defense of manslaughter.

Scott has not attached any affidavits or similar documentation to show specifically what the five uncalled witnesses would have testified to and exactly how their testimony would have helped Scott's case. Therefore, Scott has not carried his burden of proving that, had his attorney properly investigated the case and called these five witnesses at trial, the result of the proceeding would have been different.

## Conclusion

Based on the foregoing, IT IS RECOMMENDED that Scott's habeas application be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes a final ruling.

**Failure to file written objections to the proposed factual**

findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on this 2nd day of February 2016.

HON. JOSEPH H. L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE